UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.   Case No. 3:19-CR-25 JD

MICHAEL LAMAR JACKSON

## OPINION AND ORDER

Defendant Michael Lamar Jackson pled guilty to two counts of being a felon in possession of a firearm and, on November 25, 2019, was sentenced to a 46-month term of imprisonment. (DE 50.) He is currently serving his sentence in FCI Oxford with a release date of July 25, 2022. On March 15, 2021, Mr. Jackson filed a letter with the court seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (DE 63.) Mr. Jackson also requests that, in the alternative to granting compassionate release, the Court order he serve the rest of his term of imprisonment under home confinement. (DE 63 at 1.) The Court referred his motion to the Federal Community Defenders Office, which determined that it is unable to assist Mr. Jackson. (DE 64; DE 65.) Therefore, the Court will consider Mr. Jackson's own submissions. The government filed medical records and a response in opposition arguing that Mr. Jackson has not presented extraordinary and compelling reasons warranting compassionate release, and the § 3553(a) factors do not favor release. (DE 68.) The government also argues that the Court has no authority to transfer Mr. Jackson to home confinement. (DE 68 at 3.) Mr. Jackson then filed a reply to the government's response. (DE 71.)

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant

such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1; *see also United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding the substantive aspects of U.S.S.G. § 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide a court's discretion "without being conclusive"). Because Mr. Jackson submitted a request to the Warden at least 30 days before filing his motion with the Court, pursuant to § 3582(c)(1)(A), which the Warden denied (DE 63-1 at 2), the Court reviews the merits of the motion.

First, the Court does not find that extraordinary and compelling reasons warrant compassionate release or a reduction in sentence. In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would

mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

In support of his motion, Mr. Jackson asserts that he has asthma. (DE 63 at 4.) The CDC has included moderate to severe asthma among conditions that "can make you more likely" to get severely ill from COVID-19.[1] However, nothing in Mr. Jackson's medical records submitted by the government indicate that he is currently receiving treatment for asthma or that his asthma is moderate or severe. (DE 68-1.) Additionally, Mr. Jackson has already recovered from COVID-19, which lowers his chance of reinfection. Mr. Jackson tested positive for COVID-19 on October 8, 2020, and recovered from that infection on October 19, 2020. (*Id.* at 26.) The CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[2] Mr. Jackson's age also indicates he is at a low risk of severe illness if reinfected with COVID-19. Mr. Jackson is 28 years old. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age, and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have increased risk.[3] Mr. Jackson is far from this age range. Given Mr. Jackson's age, his previous infection with COVID-

---

[1] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Aug. 20, 2021).
[2] *See Reinfection with COVID-19*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Aug. 6, 2021).
[3] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated Aug. 20, 2021); *COVID-19 Risks and Vaccine Information for Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Oct. 7, 2021).

19, and that his medical records show no indication of moderate or severe asthma, the Court does not believe Mr. Jackson is at an increased risk of severe illness if reinfected with COVID-19.

A substantial portion of Mr. Jackson's motion for compassionate release focuses on the conditions at FCI Oxford, which he believes increase his risk of contracting COVID-19. (DE 63 at 1.) However, the BOP's records have FCI Oxford currently reporting zero inmates and staff members testing positive for COVID-19.[4] The facility also reports no deaths due to the virus. Though Mr. Jackson criticizes the way his facility has handled the virus, the BOP has implemented several precautions to help mitigate the spread. Of course, these precautions cannot guarantee that the number of positive inmates will not increase in the prison, and some prisons have experienced outbreaks despite those precautions, particularly as cases increased throughout the country. Over the course of the COVID-19 pandemic, there have been 584 inmates and 80 staff members who have tested positive for the virus at FCI Oxford.[5] Fortunately, the number of current cases is nonexistent, likely due to the BOP's vaccine distribution efforts.

The BOP has reported that it is in the process of distributing and administering the COVID-19 vaccine to staff and inmates under the guidance of the CDC. As of October 7, 2021, the BOP has administered 229,171 doses of the vaccine.[6] More specifically, as of October 7, FCI Oxford has 576 inmates and 80 staff members fully inoculated.[7] This means fifty-nine percent of the inmate population at FCI Oxford is fully vaccinated, greatly reducing the likelihood of another spike in COVID-19 cases in the facility.[8] Mr. Jackson has not yet received the vaccine and has not requested it. From the record, it's unclear to the Court if he has refused a vaccination

---

[4] *See Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2021).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] FCI Oxford currently houses 981 total inmates. *FCI Oxford*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/oxf/ (last visited Oct. 7, 2021).

after being offered. However, while Mr. Jackson may not be vaccinated, the risk of the virus spreading through his facility and infecting him again has likely declined given the high percentage of fully immunized inmates in his facility.[9] This weighs heavily against release.

Mr. Jackson also asserts that there are "compelling family circumstances" justifying a sentence reduction. He argues that his mother needs help taking care of their 9-year-old niece due to her old age and because she has been having trouble finding a babysitter during the pandemic. (DE 63 at 4.) Some family circumstances can justify compassionate release, such as the "death or incapacitation of the caregiver of the defendant's minor child or children," or "the incapacitation of the defendant's spouse or partner when the defendant would be their only caregiver." *See United States v. Rodriguez*, No. 2:18-CR-145, 2020 WL 5627451, at *2 (N.D. Ind. Sept. 21, 2020) (citing United States Sentencing Guidelines § 1B1.13 cmt. n.1). The Court understands Mr. Jackson's concern for his mother and niece, but these circumstances do not come close to the extraordinary and compelling reasons needed to justify compassionate release. His mother, who is the primary caregiver to his niece, has not passed away, and the niece is not his child. While Mr. Jackson describes his mother as elderly and asserts that she contracted COVID-19, there is nothing to suggest she is incapacitated. While these circumstances may not be ideal, they do not meet the high bar required for compassionate release.

For the reasons explained above, the Court cannot find that extraordinary and compelling reasons warrant compassionate release or a sentence reduction. Section 3582(c) provides the only mechanism for modifying Mr. Jackson's sentence since the Court cannot control the BOP's placement decisions, and because he is not entitled to relief under that provision, the Court cannot grant that request.

---

[9] *See Benefits of Getting a COVID-19 Vaccine,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last updated Aug. 16, 2021).

Second, even if the above facts qualified as extraordinary and compelling reasons, the Court would still deny the motion based on its consideration of the § 3553(a) factors. There are several serious § 3553(a) factors that weigh against Mr. Jackson's release. *See United States v. Ugbah*, 4 F.4th 595, 596 (7th Cir. 2021) (finding it is sufficient for a court to provide one reason adequate to support the denial of a motion under Section 3582(c)(1)). The nature and circumstances of the instant offense was serious, involving Mr. Jackson, a convicted felon, possessing multiple firearms on two separate occasions. On July 24, 2018, the police searched Mr. Jackson's apartment and found four different guns hidden under the dishwasher and stove, two of which were stolen. (PSR, DE 42 at 9.) Police also found a pistol in his Ford Explorer. (*Id.*) Then, on April 23, 2019, he was pulled over for speeding and the police found him with a firearm that had a high-capacity magazine. (*Id.*) Mr. Jackson had previously been convicted of attempted vehicular hijacking and aggravated unlawful restraint. (*Id.* at 8.). Additionally, Mr. Jackson does not point to any changed circumstances that would alter the § 3553(a) analysis. Therefore, the Court does not find that the § 3553(a) factors support Mr. Jackson' compassionate release.

Mr. Jackson also requests that, in the alternative to granting his request for compassionate release, the Court order he be transferred to home detention. However, the Court lacks the authority to transfer Mr. Jackson to home confinement. A district court lacks "authority to change [a prisoner's] place of imprisonment." *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (finding that "the district court did not err by declining to review the merits of a request [for home confinement] that it had no power to grant"). The authority to choose the place of imprisonment for a prisoner rests with the BOP, even though the Court may recommend that BOP place an offender in a particular facility. *Tapia v. United States*, 564 U.S. 317, 331 (2011)

("[T]he BOP has plenary control, subject to statutory constraints, over the place of the prisoner's imprisonment. . . .")

For those reasons, the Court DENIES Mr. Jackson's motion for compassionate release or home detention. (DE 63.)

SO ORDERED.

ENTERED: October 8, 2021

        /s/ JON E. DEGUILIO
Chief Judge
United States District Court

7